Good morning, your honors. May it please the court. My name is Anna Tola and I represent Tyrone Davis in this matter. Your honors, looking at the decision of the district court in this case, there's a very clear flaw in the court's decision determining that it had no jurisdiction to consider Mr. Davis's motion for reduction of sentence. The district court suggests that Mr. Davis's plea agreement, quote, does not identify his criminal history or any enhancements. That is not correct. In fact, looking at this case in relation to the Freeman decision and Justice Sotomayor's opinion, the Freeman plea agreement, which we have provided to the court in the appendix to our reply brief, is remarkably similar to the agreement in Mr. Davis's case. While they are not identical, they absolutely provide the type of provisions that are necessary to determine that. The difference is that the Freeman one said we think that this is going to be the criminal history category, and this one didn't say that. Correct, your honor. But both opinions talk about what the reference to the pre-sentence report, that that will be considered, and what the Davis agreement does include are specific factual stipulations that go precisely to that criminal history because they talk about. Where is it? I'm sorry. I'm trying to find what you're referring to in the plea agreement. In the plea agreement? Sure, your honor. Mr. Davis's agreement, which starts at ER 31, talks about the. . . I've got it right here. Just tell me what page and line or whatever you want me to look at. There are a couple of places, your honor. The agreement stipulates to a number of facts starting at the statement of facts in paragraph 8, which is at ER 36. That talks about the nature of the offense and the time frame with regard to that. The statement of facts. What I'm looking at is trying to apply that, so to my your opinion, I'm trying to calculate what his guidelines range would be, and I've got the part where they put his offense level of 34 from page 8, but whether he's category 1, 2, 3, 4, 5, or 6, I don't know. Where do I calculate it? The agreement talks about referencing the pre-sentence report and incorporates that, and I think that that is. . . Okay. Show me the words you want. I believe in paragraph 11. I'm sorry. What page? In paragraph 9 at page ER 38. Okay. We talk about the sentencing under this provision with regard to the 11C1C. We then go to the various provisions, acceptance of responsibility and the stipulation with regard to level 34 is right above paragraph 9. Where's the part where we can calculate which sentencing criminal history category falls in? This plea agreement, your honor, does not suggest an actual category. It does not say we anticipate a particular category. Okay. Where does it say what his criminal history is or incorporate it by reference so we can figure out the category? The criminal history is not specifically identified in the agreement. The agreement as a whole, taken as a whole, with regard to indicating that the court would consider the pre-sentence report, which would always in these matters outline the various prior criminal history of Mr. Davis. Where? Where? Where does it say to use it and how to use it? Does it say you're incorporating it? It's a little odd because the pre-sentence report didn't exist yet, but where is it? Counsel, the reason we're concerned about this is because under the statute, the defendant has to have been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. You have to show that that's what the judge did in this case. And we're looking for that. In terms of the reference to level 34, it doesn't do it. That's one axis. We need the other axis. I think when you look at the fact that the reality is, in this case, Mr. Davis is a criminal history Category 1. So if there were no impact. Well, I don't know. In fact, it had no impact. His actual criminal history had no impact at all. Correct. I mean, that seems to me to be his strongest argument. But also, I mean, what's interesting to me about this case is that we had how many this is, what's this, the second appeal or the third appeal? Third. All right. And the other two were about the sentencing guidelines. Right? Because we thought it was very important that we know that the judge actually considered the sentencing guidelines and sentenced according to them. Absolutely, Your Honor. And I think if you look, I understand the Court's concern that we do not have what there is in Freeman in terms of this is what we expect the category to be. But perhaps that reality is because that information didn't exist. What was important was the timing of the conspiracy to consider any prior history, which in a correct determination, as another panel of this Court indicated, in remanding it back for resentencing was a criminal history category of one if there wasn't evidence of earlier involvement. And that was not established. All the sending back for resentencing was because of the recognition that the judge couldn't just rely on this. He still had to do an actual sentencing calculation to decide whether to adopt this or not to adopt it. And the only result of the 11C version was that there was a different consequence for the parties if he rejected it. But that was all. He still had to do it. Correct. And, Your Honor, I think that when you look at the Sotomayor opinion, and it does not say this is the absolute picture and the only picture that would apply. It's a reasonable understanding of is this an agreement that is based on a guideline range. And the guideline range is so integral to this case. It's absolutely what allowed the critical part of the amendment, which I understand is procedurally very awkward and confusing in terms of the impact on the 11C1C. But the amendment to allow a different argument at the original sentencing was to bring up this very issue of the disparity of the crack cocaine guidelines. And we are now in a place, many years later, where that policy is accepted in a way that was completely novel back in 2006. Okay. But we have the Austin case. What's your take on the Austin case? Your Honor, I believe this is entirely distinguishable from Austin with regard to the facts. Because in Austin, there's no reference to an offense level tied to 2D1.1, which is very specific here. There's some quantity mentioned. They don't talk about the enhancements the way that the Davis Agreement does. And they most certainly do not address the types of issues with timing of the conspiracy that tied really closely to the criminal history category as a family. You make some attempt in your opening brief to argue essentially that we should go on bank on the Austin case. Do you want to tell us anything about that? Well, with all due respect, Your Honor, I mean, I think that the decisions in these cases have shown us that we are dealing with some level of arbitrariness. And that, I think, is the concern when you have a policy change with sentencing where, you know, the inclusion of one line in a sentence. And the D.C. Circuit has basically done that. It has said this really wasn't a least common denominator, the exonomerary opinion is not binding and we're going back to the plurality opinion. Right. Is that what we should do? Well, Your Honor, I think it's simpler in this case because I think the correct decision is that this case, the judge did have the jurisdiction to consider it. And while a greater good might be that decision for Mr. Davis' sake, I think that the most direct route this Court can take is to remand it for resentencing because the district court erred in concluding there was no provisions to determine the guideline. If there are no questions, I'd like to reserve just the last minute. You may do so, Counsel. Thank you. We'll hear from the Governor. Good morning, Your Honors, and may it please the Court. My name is Michael Morgan. I represent the United States in this appeal. The only pertinent inquiry is whether in 2005 when the parties negotiated this plea agreement, the plea agreement itself set forth sufficient information that would allow a guidelines calculation to be made such that the Court could determine by looking at the four corners of the plea agreement whether or not the sentencing stipulation of 18 years was somehow tied to that guideline range. And the history just shows that's not true. The parties didn't agree on the guideline range. Help me a little with that, Austin. Austin says that the exception to where a sentence is based on a C1C agreement instead of the guidelines, Austin says the first exception does not apply here because Austin's plea agreement contained a specific term and makes no mention of a particular sentencing range. Then I look at this fellow's, Davis' plea agreement, and at paragraph 8, line 4, on excerpt page 38, it says that the parties agree that his amount of crack would yield a base offense level of 34. So it looks like it does identify a specific sentencing range. Then the second exception that Austin mentions is as long as the sentencing range is evident from the agreement, then the term is based on that range. And I can see that in the same place that the sentencing range is evident from 34 except for criminal history. Well, Your Honor, that's actually not fully correct. It's correct that you can't get a range about the criminal history, but you also can't get a range because there was one key fact in dispute, which was Mr. Austin's leadership role. Role in the offense, yeah. Which was a huge swing. And there's been two appeals about his leadership role. He was originally assessed. I mean, Justice Sotomayor's opinion, it doesn't have the neatness and the ease of application of either the four justices that she concurred in the result with or the four justices whose results she disagreed with. I agree it doesn't have the neatness because those two opinions give you a binary result. Well, there's no question here that this is kind of a hybrid. You can't calculate what the sentence range would be under the guidelines because of the leadership role and the base offense level, but it's plain reading the plea agreement that the parties both considered, the prosecution and the defense, the guidelines. So it's sort of funny to say that the C1C agreement on 18 years isn't based on the guidelines in any way because it seems to say that it is, that here's the amount of the guidelines and it says the judge is supposed to consider the guidelines. Well, that, Your Honor, was the argument that Justice Sotomayor expressly rejected in her concurrence. The idea that simply because the parties in their plea negotiations consider the effect of the guidelines is not in and of itself sufficient to make the sentencing stipulation based on the guidelines within the meaning of 358-82. Well, it was at least, I mean, it was, it's just, it's a hybrid. It was at least partially based on the guideline. We know that. It was based on the guideline to the extent that this was a crack cocaine offense and therefore the base offense level was necessarily going to be determined. And they also put in the obstruction of justice. There was some discussion of enhancements and as well, right, adjustments. There was an explicit reservation for acceptance. There were sufficient facts. There was a factual stipulation for the two-point bump for school zone. So did the parties consider it? Of course they considered it. Why were they doing all this? And they happened, the fact that they happened to end up in exactly the right place for the guidelines wasn't a coincidence. But they didn't end up in the right place. Well, they did in the end, right? But that's footnote. Because once all the appeals were done and all, yes, they did. But that's not the correct inquiry with respect. If you read footnote 8 of Justice Sotomayor's concurrence, it's the party's calculation at the time of the agreement. I understand that, but what I'm saying is that it wasn't, they had something in mind and it turned out what they had in mind was correct, actually. Actually, it wasn't because when the sentences, when the parties negotiated this, the government was recommending a below-guideline sentence. The defense was recommending an above-guideline sentence. What that just basically goes to show is that nobody was concerned about the guidelines. They just picked a number. And the number didn't correspond to either of the guideline calculators. As to the sentencing, as to the criminal history, the only difference between this case and Freeman was Freeman said, well, we're not going to know the criminal history until the pre-sentence report, but where we estimate it at X. That's all they said was we estimate it. And here they didn't say we estimate it. No. And, in fact, in 2005, again, which is the pertinent inquiry, the defense stipulated that it was a level 2. Everyone agreed that he was level 2. It was on appeal that the court ---- We're set in the record. I don't ---- Unfortunately, you don't have the original sentencing, defense sentencing memoranda in the excerpts. I can point you to the CR site for that, which is going to be ---- I actually have that. It's CR 497, page 3. That's the defense original sentencing memorandum. But if you actually read the court's initial Freeman opinion, the opinion makes clear that the parties had agreed that it was level 2. It was just the court found it was plain error for the defense to have stipulated to that based on what was known at the time. Now, counsel, before we get to Freeman, of course, we have to look at Austin. What's the government's position with respect to the role of Freeman as against Austin in this case? Well, I think this case and Austin is a straightforward application of Freeman, and I think the government's position is that this case is controlled by Austin. Austin is not distinguishable. Well, it is in terms of what the actual agreement was, which had, as I understand it, essentially no guideline discussion. Actually, again, the agreement's not in the record, but if the court were inclined to go look at the plea agreement at issue in Austin, it actually did stipulate to a base offense level because it stipulated to the amount of crack cocaine. It had no stipulation about any other enhancements. Well, you just said it's not. It didn't stipulate to a base. It stipulated to an amount, but not to a base offense. Well, the stipulating to amount is stipulating to a base offense level because that's just how it works. I mean, they didn't have to reference 2D1.1c if you stipulate. I guess it's not so. So isn't this case a very good illustration of why the Sotomayor version makes very little sense? I mean, given the fact that we're now at our third appeal because the other two spent all their time on the sentencing guidelines, which apparently supposedly don't matter. Well, the guidelines in this case matter, but they matter in a different way because, again, this is an 11c1c plea agreement. The guidelines matter to the extent the court wants to assure itself that the sentencing stipulation is reasonable. Not necessarily because the sentence ultimately is based on the guidelines. Otherwise, why are we worrying about that? But, again, that wasn't true when the court sentenced originally in 2005. The court accepted a sentence that was below its guideline calculation. And then when it turned around and re-sentenced. Well, you can always do that. But it first had to do the calculation. It had to base the sentence or its determination of the sentence on the guideline. So, I mean, that leads to the question of whether we ought not to consider all this based on a D.C. Circuit opinion. Well, two things there. One, I would take issue with the first statement because in the 11c1c context, while you do a guidelines calculation, you're only doing that to accept the sentencing recommendation. You may feel that the sentencing recommendation, where it lies in the guidelines, is not what you as a judge would impose, but that's not the inquiry. It's just is this a reasonable sentence, hence should be accepted. It's not the same thing as calculating the guidelines and then saying I'm going to impose this guideline sentence. But you don't have to impose it. It's no different. After Booker, there's no difference because you don't have to impose the guideline sentence even after you've calculated the guideline. And if you don't have an 11c1c. That is true. But nevertheless, the inquiry is different of what the Court is doing as a doctrinal matter is different in the 11c1c context than in when it's straight up sentencing. With respect to whether or not the Court. No, I'm having more trouble the more you give me on that. That's not good. And my problem is it's plain that Congress wanted this change in the crack guidelines to be retroactive. It did, but to a limited class of offenders. And now what we're doing is limiting and distinguishing away the congressional intent. And it seems really artificial. I mean, another paragraph of Austin says, a plea agreement might provide for a specific term of imprisonment, such as a number of months, but also make clear that the basis for the specified term is a guideline sentencing range applicable to the offense to which the defendant pleaded guilty. That sounds like disagreement. But then the next sentence says, as long as the sentencing range is evident from the agreement itself, then the term is based on that range. Well, that's not disagreement because you can tell the level, but you can't tell the range without criminal history. On the other hand, I'm not sure whether there's a negative pregnant in that sentence or not. I know that if the plea agreement did say what his range was, then Austin would say the changes in the crack guidelines are retroactive for him. But it's not clear to me whether Austin says if it's based on the guidelines to some extent, the C1C agreement is based on the guidelines to some extent, but you can't calculate the range because of the absence of criminal history, then it's not based on the guidelines. It doesn't say that. It just says if you can, it is, not that if you can't, it isn't. Well, I think there's – I don't think you can have an agreement that's based on the guidelines somewhat. It is either based on the guidelines or it is not within the meaning of the statute. That I don't understand. Well, that's the statutory language. That would be a nice, neat, binary treatment that Justice Sotomayor basically rejects, and we've already held that her opinion controls, even though it's only one vote. Well, that is true, and this panel is bound by Austin, and I do think that Austin gives you the framework for deciding this case. But only if I read a negative pregnant into it. Well, no, Your Honor, because the Sotomayor concurrence admits of two exceptions. One is where the guideline range is where the plea agreement stipulates to a range. So the guidelines will say we will stipulate a sentence between X and Y. Well, that's not this case because it was a determinate sentence. In the – if it's the determinate sentence, then what you have to be able to do to say that it's based on the guidelines is to look at the four corners of the plea agreement and be able to make a guidelines calculation so that you can look at a guideline range and the determinate sentencing stipulation and see that this is related to that. If you can't make that – But actually, literally, in Freeman itself, that wasn't true. I think it was, except for the qualification that the criminal history four was always subject to what probation would – Exactly. It wasn't true. But Freeman says it's the party's agreement that controls. Footnote 8 says that if the district court were to make a different calculation at sentencing, it's still the party's calculation in the sentencing stipulation that matters. So the fact that at sentencing, the district court may, after getting the pre-sentence report, say, you know what? He's actually a level five, and therefore, I have a guidelines calculation that differs from what you would get from the four corners of the plea agreement doesn't matter. Everything seems – I need to look at the leadership role thing. I don't – I haven't really absorbed that. But as far as I could tell, everything turned on the difference between estimating a criminal history and probably estimating it in the negotiations but not bothering to put it in the agreement because it's still an estimate no matter what you do. Well, there are two things. I mean, with respect to criminal history, I would imagine there was some sort of estimating, although everyone seemed to agree that he was two. But with respect to leadership role, that's self-evident. That has been in dispute for six years, seven years. Thank you, counsel. Your time has expired. Our questions took you way over your time. Thank you, Your Honor. Ms. Tolan, you have some reserved time. Just briefly, Your Honors. I think that the one thing that Mr. Morkin and I agree upon here is that the parties had a very precise agreement about 2D1.1 and what – how that – And where would we go to find that agreement? That, Your Honor, is in the plea agreement talks about – I'm going to make me find a page again for you. The very – Page 38. Was that – go back to 38? Yeah. That has to do with page 38 at the very top. It talks about base offense level of 34. You're relying on the reference to level 34. Right. That is the absolute agreement. What is the sentencing range for 34? The sentencing range is, Your Honor, at the time of his sentence was with 34, and the adjustments that the court imposed at the resentencing range was 188 to 235. The original sentencing range – And in years, what is that? I'm not sure I can do that. 18 years is within it. It's within that range. The original sentence was 235 to 293. The range was below. So we are now – the adjustment under the retroactive amendment brought it down to 151 to 188. So he's well above the range. So what we have is the party's focus of this agreement being on a guideline range that has been lowered, been retroactively lowered, as the court has pointed out, and that there may be disputes about the application or the correctness of other provisions does not mean that that wasn't the driving factor of this consideration. I think it's incongruous to think that looking at the drug quantity is not where these agreements start. And when you have the types of provisions in an agreement that round out the sentence and provide a very significant basis, and you have two different panels of this court saying, we must look at the court's calculation of the guidelines. The last remand the court indicated that it wouldn't reconsider the reasonableness – or the last remand when the court would not consider the reasonableness and upheld the resentencing, it indicated that it was because within the guideline range. I am curious about why nobody did the arithmetic. I just did it, and since I just did it on the bench while I was listening to you, I came to 15 to 19 years if he's criminal history category or level one, and at 34 he gets 188 to 235 months. Your Honor, that would have been before the reduction because his criminal history category is actually one. The criminal history category of two was an incorrect application. So the 15 to 19 years would be his sentencing range. It would be 151 to 188 under this. Oh, 151 to 188? Yes. So the 216 is actually – Why is that? I was looking at the range you told me, 188 to 235. Under the retroactive. No, but at the time. You need to know what it was at the time. It's correct, right? At the time of his resentencing, because there was the original sentencing and then the resentence. At the time of the resentencing, his range was the 188 to 235. And this was within it. Yes. At the time of the original sentencing. It was below. Because the original sentencing the court calculated as 235 to 293. Counsel, do you want to say anything in response to counsel's defense of the Austin case? Well, again, Your Honor, I think that there are numerous considerations in this plea agreement. If we are looking at having to weigh these nuances of the plea agreement and you look at the Austin agreement, I'm happy to provide the court. Nuances are what we weigh, and this is your chance to provide it to us. How do we distinguish Austin precisely? Because Austin does not talk about the enhancements for the school zone. It doesn't talk about the timing of the conspiracy, which tied specifically to the aspects of what the ultimate criminal history ended up being. That's a distinction like, well, in Austin he was wearing a green sweater and my client was wearing a red sweater. I don't see how it's a material distinction. Well, I guess I also think, Your Honor, that ultimately, you know, my personal opinion about the Austin decision is one thing, but there are distinctions. So it's hard for me to say, like, it's fair that Mr. Austin doesn't get consideration and that Mr. Davis does. I think they both should. One last thing. The leadership issue was not anywhere in the plea agreement. Is that right? Well, there are factual stipulations that talk about information related to it. And I think that But there was no agreement or no discussion of it. Does it end up affecting the range? Yes, the court does apply a leadership role. And that was a consideration. There was a greater leadership role that was imposed initially, and that was reduced. So that was a consideration that was Well, if you got to the one, whatever the range was that you said was the one that the 18 years is within, then that included a leadership range, and that wasn't in the agreement. That's correct. But I do think that Thank you, counsel. Your time has expired. I'm sure I speak for the court in saying we appreciate very much the help that both sides, both counsel gave to us in this very, very complex issue. Thank you.
judges: O'scannlain, Kleinfeld, Berzon